UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JERRY HOPKINS, )
 )
      PLAINTIFF, )
 )
vs. ) CASE NO. 17-CV-364-FHM
 )
 )
NANCY A. BERRYHILL,[1] )
Deputy Commissioner for Operations, )
performing the duties and functions )
not reserved to the Commissioner of )
Social Security, )

## OPINION AND ORDER

Plaintiff, JERRY HOPKINS, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the decision is supported by substantial

---

[1] Ms. Berryhill, Deputy Commissioner for Operations, is leading the Social Security Administration pending the nomination and confirmation of a Commissioner. Pursuant to Federal Rule of Civil Procedure 25(d), Deputy Commissioner for Operations Berryhill should be substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff Jerry Hopkins' applications were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) Christopher Hunt was held December 9, 2015. By decision dated February 8, 2016, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on April 25, 2017. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater,* 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 993 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 41 years old on the alleged date of onset of disability and 44 years old on the date of the denial decision. He has a tenth grade education and past work experience includes a welder, oil field pumper, and maintenance repairer. [R. 23, 194]. Plaintiff claims to have been unable to work since October 7, 2013[3] due to ankylosing spondylitis, pain in lower back, and pain in both hips. [R. 193].

---

[3] Plaintiff amended his onset date from May 1, 2010 to October 7, 2013. [R. 49].

2

## The ALJ's Decision

The ALJ determined that Plaintiff has the following severe impairments: osteoarthritis, obesity, and fibromyalgia. [R. 16]. The ALJ determined that the Plaintiff has the residual functional capacity to perform light work except he can specifically lift/carry up to 20 pounds occasionally and 10 pounds frequently. Plaintiff can sit/stand and/or walk 6 hours in an 8 hour day. Plaintiff cannot climb ladders, ropes, or scaffolding, but can occasionally climb stairs and ramps. He is limited to occasional stooping, crouching, and crawling. Plaintiff is limited to frequently grasping, handling, and fine motor manipulation. [R. 17]. The ALJ determined that although Plaintiff cannot return to his past relevant work, based on the testimony of the vocational expert, there are a significant number of jobs in the national economy that Plaintiff could perform. [R. 23-24]. Accordingly, the ALJ found Plaintiff was not disabled. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

## Plaintiff's Allegations

Plaintiff asserts the ALJ failed to: 1) consider ankylosing spondylitis as a medically determinable impairment; 2) properly consider the treating physician's opinion; and 3) properly consider Plaintiff's statements. [Dkt. 14, p. 4].

## Analysis

Ankylosing Spondylitis

A recurring claim in Plaintiff's arguments before the court is that the ALJ did not consider Plaintiff's ankylosing spondylitis in reaching the decision that Plaintiff is not

3

disabled. Plaintiff's argument is not supported by the record. Plaintiff's ankylosing spondylitis is noted numerous times in the ALJ's Decision and a fair reading of the Decision shows that the ALJ did, in fact, consider Plaintiff's ankylosing spondylitis.

Plaintiff argues that the ALJ erred at step two by failing to consider Plaintiff's ankylosing spondylitis as a medically determinable impairment. [Dkt. 14, p. 5]. At step two of the evaluative sequence, the ALJ must determine whether Plaintiff suffers from severe impairments. That is all that is required of the ALJ at step two. *Oldham v. Astrue,* 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ finds that a claimant has at least one severe impairment, a failure to designate others as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1521, 416.921; *see also* 20 C.F.R. §§ 404.1525(e), 416.945(e); *Mariaz v. Sec'y of Health & Human Servs.,* 857 F.2d 240, 244 (6th Cir. 1987), *Brescia v. Astrue,* 287 Fed. Appx. 616, 629 (10th Cir. 2008). The ALJ's decision demonstrates he considered all of Plaintiff's alleged impairments. Thus, the court finds no error in the ALJ's findings at step two.

Plaintiff also argues that ankylosing spondylitis was not considered at step three. The Listings of Impairments (Listings) describe, for each of the major body systems, impairments which are considered severe enough to prevent a person from performing any gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App.1. At step three of the sequential analysis, the ALJ is required to discuss the evidence in the context of the relevant listing and the reasons for determining that Plaintiff does not meet a listing. *Clifton v. Chater,* 79 F.3d

4

1007, 1009 (10th Cir. 1996). It is well established that it is Plaintiff's burden to show that his impairment is equivalent to a listing. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). It is also well established that all of the specified medical criteria must be matched to meet a listing. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1988).

20 C.F.R. §14.09 Inflammatory arthritis states:

\* \* \*

C. Ankylosing spondylitis or other spondyloarthropathies, with:

1. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees); or

2. Ankylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity.

Contrary to Plaintiff's claims, the ALJ accurately summarized the medical record including the diagnoses of ankylosing spondylitis by treating physician, Dr. Howard, and consultative examiner, Dr. Krishnamurthi. [R. 20]. However, no lumbosacral spinal functions were noted by any physicians with the exception of Dr. Krishnamurthi who found normal cervical spine flexion and only slightly reduced dorsolumbar spine flexion. [R. 404, 406]. Further, Dr. Krishnamurthi noted Plaintiff had a stable gait, able to walk with a slight limp on the left due to pain, heel/toe walking was normal, motor strength 5/5, range of motion of the lumbosacral spine slightly reduced, range of motion of the cervical spine

5

within normal limits, range of motion fo both hip joints slightly reduced due to pain, range of motion of right shoulder reduced due to pain, and range of motion of the left upper extremity within normal limits. [R. 404-405].

Because Plaintiff did not show the required degree of spinal fixation of the dorsolumbar or cervical spine, the court finds that the ALJ appropriately focused on the work-related functional limitations related to the diagnoses in the record. Further, it is clear from the decision that the ALJ did consider ankylosing spondylitis and his determination that Plaintiff did not meet or medically equal the listings is supported by substantial evidence.

## Residual Functional Capacity

Plaintiff argues the ALJ's consideration of medical opinions, the Plaintiff's allegations, and the RFC assessment all were affected by the ALJ's belief that the impact of ankylosing spondylitis did not need to be considered. [Dkt. 14, p. 6]. In making the RFC assessment, an ALJ considers how an impairment, and any related symptoms, may cause physical and mental limitations that affect what a claimant can do in a work setting. 20 C.F.R. § 404.1545(a)(1). The RFC represents "the most [a claimant] can still do despite [his] limitations." *Id.* In making his RFC findings, the ALJ gave great weight to the opinion of state agency medical consultant, Dr. Horn, who opined that Plaintiff could perform narrow light work with postural limitations. [R. 84-89]. Dr. Horn noted lower back and hip x-rays of January 2014 showed degenerative changes of the sacroiliac joints and bilateral hips. July 2013 x-rays of hands showed mild osteoarthritis DIP points of hands; motor strength 5/5 in upper and lower extremities and in grip strength. Plaintiff had no problems with personal care, was able to cook, do laundry, take out trash, and shop with aid of a cart.

6

The ALJ found that Dr. Horn's opinion was supported by the objective medical evidence in the record which indicated Plaintiff was in no acute distress. [R. 22]. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. See e.g. *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work), *Scull v Apfel*, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). The court finds that the ALJ did consider the impact of ankylosing spondylitis and substantial evidence supports the physical RFC findings of the ALJ.

Treating Physician

Plaintiff argues that the ALJ erred in rejecting the opinion of treating physician, Kalvin White, D.O. [Dkt. 14, p. 6]. Dr. White opined Plaintiff was able to sit, stand, and walk for less than 2 hours because of ankylosing spondylitis. [R. 534]. The ALJ gave no weight to Dr. White's opinion because it is not supported by his treatment notes or other medical evidence of record. [R. 22]. Plaintiff contends that the ALJ's specific reason for rejecting Dr. White's opinion was because on the visit before he provided his opinion, Plaintiff reported significant improvement in his pain and was encouraged to exercise. [Dkt. 14, p. 7, R. 533]. It is Plaintiff's position that he reported significant improvement with pain

after the fourth procedure to deaden nerves in his back and that he continued to have pain in his sacroiliac joints and other joints due to ankylosing spondylitis. [R. 533].

On June 24, 2014, Plaintiff was examined by pain management specialist, Kalvin White, D.O. , who diagnosed Plaintiff with ankylosing spondylitis and sacroiliac joint pain. Plaintiff underwent a series of sacroiliac joint injections and reported improvement following the injections. In July 2015 Dr. White performed a radiofrequency rhizotomy, [R. 493], after which Plaintiff reported significant improvement in his pain. [R. 533]. On August 6, 2015, Dr. White noted that although Plaintiff still had some bad days, Plaintiff reported significant improvement in his pain post radiofrequency rhizotomy from July 2015. Dr. White encouraged Plaintiff to maintain his exercise regimen and to reduce his pain medication. [R. 533]. Approximately three months later, Dr. White completed a Medical Source Opinion of Residual Functional Capacity dated November 3, 2015 opining Plaintiff could sit/stand/walk less that two hours during an eight hour work day, and lift/carry less than ten pounds. Dr. White indicated that the medical findings that supported his assessment was ankylosing spondylitis. [R. 534].

A treating physician's opinion is accorded controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. However, should the opinion be deficient in either of these respects, it shall not to be given controlling weight. When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision. An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility

judgments, speculation or lay opinion." *Watkins v. Barnhart,* 350 F.3d, 1297, (10th Cir. 2003). As a treating physician, Dr. White's opinion was entitled to deference. But as the ALJ observed, Dr. White's opinion was given no weight as it is not supported by his own treatment records or other medical evidence of record. [R. 22]. Since the ALJ's summary of Dr. White's records was accurate, and since the records do not contain additional findings or detail about Dr. White's treatment, the reasons the ALJ gave for rejecting Dr. White's RFC are clear and supported by the record. The court finds no error in the ALJ's treatment of Dr. White's opinion.

Plaintiff also argues that the ALJ did not provide any reason for not accepting the limitations given by his primary care physician, Dr. Remington. On January 9, 2015, Dr. Remington completed a handicap placard application which indicates Plaintiff "cannot walk 200 feet without stopping to rest and is severely limited in his or her ability to walk due to an arthritic neurological, or orthopedic condition . . ." [R. 492]. To the extent the handicapped parking application can be considered a medical opinion, Dr. Remington's records do not contain examination notes or findings to support a remand for the purpose of further consideration of Dr. Remington's "opinion." Moreover, the court does not consider the handicapped parking application to be opinion evidence that the ALJ was necessarily required to discuss in detail.

### Plaintiff's Statements

Plaintiff argues that the ALJ failed to perform a proper credibility determination. Plaintiff asserts that it is likely the ALJ's failure to include ankylosing spondylitis as a medical impairment influenced his finding. Plaintiff contends the record clearly establishes

ankylosing spondylitis as Plaintiff's primary impairment and is wholly consistent with his allegations. Further, the ALJ did not say what objective evidence was inconsistent with Plaintiff's pain. [Dkt. 14, p. 10-13].

Credibility determinations are peculiarly the province of the finder of fact, and the court will not upset such determinations when supported by substantial evidence. An ALJ's credibility determination must be "closely and affirmatively linked" to substantial record evidence. *Hardman v. Barnhart,* 362 F.3d 676, 678-79 (10th Cir. 2004). The ALJ did just that. The ALJ accurately outlined the points where Plaintiff's statements were inconsistent and where his allegations are contradicted by medical records. In assessing Plaintiff's credibility, the ALJ took into account Plaintiff's more recent reports to his pain management specialist that showed his pain medication and the radiofrequency rhizotomies had helped his pain significantly. Plaintiff's testimony that he used his cane at all times contradicted medical records which showed he rarely brought it with him to doctor appointments. [R. 18, 23]. There was no evidence of requirement for use of a cane in light of Plaintiff's stable gait despite slight left limp. [R. 20, 404-405]. Further, Plaintiff did not always take medication as prescribed and while reporting medication side effects to the Commissioner, he primarily denied such to physicians. [R. 22, 439, 507, 525].

The ALJ's credibility findings are closely and affirmatively linked to substantial evidence. Therefore, the court finds no reason to deviate from the general rule to accord deference to the ALJ's credibility determination.

## Conclusion

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. The court further finds there is substantial evidence in the record to support the ALJ's decision. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 16th day of May, 2018.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE